## C. K. HALL v. PHIL. CLAIBORNE.

In a contest for letters of administration between two parties, the party who appears and contests the application assumes the position and responsibilities of a defendant.

If the contestant, in such a case, appeals to the District Court from an order of the County Court granting letters of administration to the applicant, the parties occupy relatively the same position in the District Court as they did in the County Court; the applicant should appear on the District Court docket as plaintiff and the contestant as defendant.

Although the act to provide for vesting in the State escheated property, passed March 20, 1848, was unquestionably intended to furnish a remedy for escheating both real and personal property to which the State is entitled, without a previous administration; yet it was not intended to prohibit the administration of estates in the County Court, of persons dying intestate without heirs.

The general jurisdiction of the County Court for the purposes of administration on the estates of deceased persons is not limited by the fact that the property of the decedent will escheat to the State.

The act of March 20, 1848, (O & W. Dig., p. 160,) was intended to provide a remedy for the enforcement of the rights of the State, when from the nature and character of the property, an administration was unnecessary, or for any reason there had been a failure to invoke the jurisdiction of the County Courts for this purpose. It was intended simply to vest the property of the decedent in the State, but its object was not to provide a different mode for the settlement of the estates of persons dying without heirs.

By its terms, this law is only applicable when no letters of administration have been granted: the jurisdiction of the County Court is unquestionable, unless the jurisdiction has been ousted by the institution of proceedings in the District Court for the purpose of escheating the property of the estate; but if such proceedings are instituted and dismissed, the jurisdiction of the County Court again attaches.

See the agreement embraced in the affidavit filed in the appellate court, which was held to constitute a reasonable excuse for failure to file the record in the appellate court within the time prescribed by the statute.

APPEAL from Bastrop. Tried below before the Hon. A. W. Terrell.

This was a contest between Phillip Claiborne, the appellee, and C. K. Hall, the appellant, for letters of administration upon the estate of J. C. Radford.

J. C. Radford, a resident citizen of Bastrop county, died in September, 1854, in the city of Houston in this State, on a visit, leaving no known heirs. All, or the principal part of his property, was in Bastrop county. Phillip Claiborne, the appellee, and one James Nicholson, applied to the County Court of Bastrop county, for letters of administration upon the estate of said decedent. G. W. Jones, the district attorney, on behalf of the State, opposed the application, on the ground that Radford died without heirs, and that his estate escheated to the State. Whereupon the County Court dismissed the application, from which order of dismissal Claiborne and Nicholson appealed to the District Court of Bastrop county. Their appeal was also dismissed.

On the 25th day of February, 1857, G. W. Jones, as district attorney on behalf of the State, filed a petition in said District Court to escheat the estate of said decedent, making, among others, the appellant Hall party defendant, as he appeared to be one of the largest debtors.

The appellant, Hall, and others, appeared and opposed the petition to escheat, setting up, among other things in their plea of abatement, that the District Court had no jurisdiction of the cause, for the reason that the said application of Claiborne and Nicholson for letters of administration upon the estate of said decedent, had been made in the Probate Court of said county of Bastrop, and the same cause was still pending in the District Court of said county, on appeal, undetermined. At the Fall Term, 1857, a decree was rendered, escheating said estate, and ordering sale of assets. At the Spring Term, 1858, this decree was set aside, and the cause dismissed.

On the 23d of April, 1858, Phillip Claiborne, the appellee, filed his application in the Probate Court of said county, for letters of administration *pro tem.* upon said estate. Jones, the district attorney, joined in this application. The application was granted; letters *pro tem.* issued, and Claiborne qualified. On the 22d of April, 1858, Claiborne filed a petition in said County Court for general letters of administration upon said estate; which petition was also endorsed by the said district attorney. Hall, the appellant, opposed the grant of letters to Nicholson and Claiborne

and also the grant of letters to Phil. Claiborne, for the following reasons: 1st. The application of Claiborne on its face shows that Radford died leaving no heirs; that in such case the Probate Court has no jurisdiction. 2d. Because the act of March 20, 1848, concerning the estates of deceased persons, confers no power or jurisdiction on the Probate Court to act under the state of facts presented in his application. 3d. Because, by the showing of Claiborne, said estate is not subject to administration, but must be escheated in the District Court of the State. Other causes were assigned, which need not here be stated.

Regular letters were granted to Claiborne by the Probate Court, from which Hall appealed to the District Court.

Before trial was had, Claiborne moved the court to docket the cause, so as to place Claiborne as plaintiff and Hall and others as defendants. The motion was sustained, and Hall excepted.

On the trial, Claiborne read in evidence transcripts of the proceedings had in the County Court on his applications for letters of administration *pro tem.*, and for general letters of administration, and also on the application of Nicholson and Claiborne.

It was admitted by all parties, that Radford was a resident citizen of Bastrop county for five or six years before his death; that he died in this State in 1854; that he entered into mercantile partnership with Hall & Gillespie in the spring of 1854; that the partnership continued up to the time of his death; that at that time he was possessed of the assets mentioned in the petition of Claiborne. Much evidence was introduced in reference to the relative merits of the applicants for the appointment of administrator; but as it is not commented on by the court, it is not further stated. Verdict and judgment were for Claiborne. Hall appealed.

On the 14th of December, 1859, the appellee filed in the Supreme Court a certificate of the judgment; and moved an affirmance without reference to the merits. On the 4th day of January, 1860, the appellant filed a full record of the proceedings in the court below. On the 6th day of January, 1860, the appellee filed a motion to dismiss the case from the docket, because the record had not been filed within the time prescribed by law.

On the 15th day of October, 1860, the appellant filed a motion to dismiss the certificate for affirmance, and to allow the record to remain on file. In support of his motion, he filed the following affidavit:

"And this day personally appeared before me the undersigned authority, C. K. Hall, the appellant in the above cause, and makes oath, that the case of Hall v. Claiborne, being an appeal from the Probate Court of Bastrop county, concerning the right to administer upon the estate of J. C. Radford, deceased, in which case affiant was and is appellant, was tried at the October Term, 1859, of said District Court, and that before the adjournment of said District Court, the Supreme Court was in session at Austin, and the docket of the Second Judicial District was being called, and was, as affiant is informed, very much crowded at the time. Affiant further swears, that at the time of the adjournment of the said District Court, that, by both sides, the statement of facts was prepared very hurriedly; so much so, that it was impossible for the counsel to agree as to them, and especially as to the testimony of A. D. McGinnis, who was a witness in the cause, and it was agreed and understood between the attorneys, on both sides, as he is informed and believes, and therefore so states, that the evidence of A. D. McGinnis, as stated in the statement of facts, should be submitted to the said McGinnis, and if he should agree to the evidence as there stated, then it was to stand; but if the said McGinnis should wish to correct and alter the same, that then it should be so altered by the said McGinnis as to conform to the truth. Affiant further avers, that the said agreement and statement of facts were made up during the last days of the session of the District Court of Bastrop county; that immediately after the adjournment of said court, the said McGinnis, who was the district attorney for the Second Judicial District, was forced by his professional duties in his official capacity to attend court at Lockhart, in Caldwell county, and from thence to attend court at Seguin in Guadalupe county, and thence to go to San Marcos in Hays county, to attend to his professional duties. That the said McGinnis left Bastrop before either party had time to inform him of the agreement, and before he had time, even had he been so in-

formed, to examine carefully said evidence, but affiant avers that during the sitting of the District Court at Lockhart, as he is informed and believes, and so states, that one of his attorneys, John Hancock, saw the said McGinnis at Lockhart, and informed him of the agreement and requested him at as early a day as possible to examine said statement, and, if necessary, to correct the same, and the said McGinnis promised so to do. Affiant further avers, that the said McGinnis returned home but once before said certificate was here filed, being detained at the said courts by his official duties as aforesaid, and on that occasion, as he is informed and believes, the said McGinnis remained in said county but one day, and was in the town of Bastrop but a few hours on Sunday, as he is informed. He failed to examine said statement, nor did he look at the same until after said certificate was filed in the Supreme Court at Austin. Affiant avers that neither he nor his counsel supposed that the said record would be demanded before such examination by said McGinnis was made, or that any advantage would be taken of it. Affiant further avers, that the said certificate was sued out and filed in great haste, and at the earliest period, and that he filed the transcript so soon as he learned that this advantage was to be taken; he honestly intended to file in good faith said transcript; that the judgment rendered is erroneous and unjust.

*Hancock & West*, for appellant.

*W. L. & C. L. Robards*, and *Chandler & Turner*, for appellee.

ROBERTS, J.—The reason set forth in this case why it was not brought into this court at the first term shows that the parties made an agreement in writing which might delay the preparation of this case for this court, and a reasonable excuse is given why it was not performed sooner. Had there been no such agreement each party would have been left fully to pursue his own course. Under these circumstances we think the motion must be sustained.

MOORE. J.—The transposition of the names of the parties on the docket of the District Court, was not erroneous. The proceeding in the County Court was instituted by Claiborne. The question of administration was brought before the court by him. Hall voluntarily appeared and made himself a party for the purpose of resisting the application, and thereby assumed the position and responsibility of a defendant. And although the case was carried to the District Court by Hall's appeal, yet as it was to be tried *de novo*, the parties occupied relatively the same position in the controversy that they did in the County Court.

The plea to the jurisdiction of the County Court was properly overruled. Although the act to provide for vesting in the State escheated property, passed March 20th, 1848, was unquestionably intended to furnish a remedy for escheating both real and personal property, to which the State is entitled, without a previous administration, it was not intended thereby, to prohibit administrations upon the estates of persons dying intestate, without heirs. This statute, and so much of the act regulating proceedings in the County Courts, pertaining to estates of deceased persons, as refers to the estates of those persons dying without heirs, are to be construed in *pari materia*. When this is done the true interpretation of the statute is not a matter of doubt. The general jurisdiction of the County Court, for purposes of administration on estates of deceased persons, is not limited by the fact that the property of the decedent will escheat to the State. The act of March 20th, 1848, was intended to provide a remedy for the enforcement of the rights of the State, when from the nature and character of the property an administration was unnecessary, or for any reason there had been a failure to invoke the jurisidiction of the County Court for this purpose. The statute of escheats was intended, simply. to vest the property belonging to the decedent in the State; its object was not to provide a different mode for the settlement of the estates of persons dying without heirs. The provisions of this law are wholly inadequate to this end. To attempt to do so under it, would lead to irreconcilable confusion and embarrassment. By its very terms, however, the law is only applicable where no letters of administration on the estate of an intestate

Hall v. Claiborne.

have been granted. Then unquestionably administration of such estates may be granted, unless jurisdiction has been ousted by the institution of proceedings in the District Court, for the escheat of the property of the estate. Although a proceeding for this purpose had been commenced in the District Court, by the district attorney, yet, on the day on which the application for letters of administration was made in the County Court, it was dismissed by the Court, on the motion of the district attorney himself, who appeared in the County Court, and recommended the grant of administration on the estate to Claiborne. Under these circumstances, it cannot be doubted that the petition filed in the District Court, to escheat the property of the intestate had been dismissed, and the jurisdiction of that Court over it had ceased at the time that of the County Court was invoked by the application for the letters of administration.

The respective qualifications of the parties for the discharge of the duties of an administrator of the estate was a matter within the discretion of the County Court, and there is nothing in the record to induce the belief, that it was, in view of all the facts before it, improperly exercised. There are no other questions in the case that need be specially considered. The judgment is affirmed.

Judgment affirmed.