## HAMILTON *v.* BROWN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 241. Submitted November 2, 1894. — Decided March 2, 1896.

Upon proceedings under the statute of Texas of March 20, 1848, c. 145, for the escheat of land of a person who is dead, in which the petition describes the land, gives his name, and alleges that he died intestate and without heirs, that no letters of administration upon his estate had been granted, that there is no tenant or person in actual or constructive possession of the land, nor any person, known to the petitioner, claiming an estate therein, and that the land has escheated to the State of Texas; and an order of notice to all persons interested in the estate has been published, as required by the statute; and, after a hearing of all who appear and plead, judgment is entered, describing the land, and declaring that it has escheated to the State; the judgment is conclusive evidence of the State's title in the land, not only against any tenants or claimants having had actual notice by *scire facias,* or having appeared and pleaded, but also against all other persons interested in the estate and having had constructive notice by publication.

The constitution of Texas of 1869, art. 4, sect. 20, declaring it to be the duty of the comptroller of public accounts to "take charge of all escheated property," did not affect pending proceedings for escheat under the statute of March 20, 1848, c. 145, so far as concerned the vesting of the title to the land in the State, even if it should be held to repeal the provisions for a subsequent sale of the land by the sheriff.

The constitution of Texas of 1869, art. 10, sect. 6, forbidding the legislature to grant lands except to actual settlers, did not affect judicial proceedings to declare and enforce escheats.

THIS was an action brought April 12, 1890, in the Circuit Court of the United States for the Western District of Texas, by Joseph F. Hamilton, a citizen of Missouri, Lewis Hamilton, and Mary A. Post, joined by her husband George Post, citizens of Illinois, Walter B. Hamilton, and Elizabeth Fulton, joined by her husband John G. Fulton, citizens of Kansas, and John F. Hamilton, a citizen of Colorado, against J. T. Brown and twenty-five others, all citizens of Texas, and living in the county of Fayette, within the Western District of Texas, to recover land in that county.

The petition alleged that the land consisted of one league, described by metes and bounds, granted to Walter F. Hamilton by the Republic of Mexico on April 30, 1831; that on April 13, 1888, the plaintiffs were the owners in fee simple of the land, and entitled to the possession thereof; and that the defendants on that day unlawfully entered thereon and dispossessed· the plaintiffs, and had ever since withheld the possession from them.

The defendants, in a supplemental answer, " say that plaintiffs ought not to have or maintain this action against them, because they say that on the 30th day of March, 1861, one Edward Colier, at that time the lawful district attorney of what was then the first judicial district of Texas, acting for and under authority of the State of Texas, filed in the name and by the authority of the State of Texas a petition and began a suit in the district court of Fayette County, Texas, the object and purpose of which suit was to have said district court of Fayette County declare and adjudge that the league of land described in plaintiffs' petition in this suit had escheated to the State of Texas, and to have the title to the same divested out of the said Walter Hamilton and his heirs, and have it vested in the State of Texas; that in said petition plaintiff alleged that Walter Hamilton, late a resident of Fayette County, in said State, died on the —— day of ——, ——, intestate, and without heirs, and that no letters of adminis-

tration have ever been granted upon said decedent's estate in Fayette County, in which succession should according to law have been opened; that said decedent died seized and possessed of the league of land which is described in the petition of plaintiffs in this suit and which is fully described in said petition; that said Walter Hamilton was the last person seized and possessed of said land; that there are no tenants upon said tract of land, and no person is either in actual or constructive possession of said tract of land or any part thereof, nor is there any person, claiming the estate in and to said tract of land, known to petitioner; that no person has paid the taxes on said land or any part thereof; that the estate in and to said tract of land has escheated to the State of Texas, and praying for the grant of writ of possession in and to said tract of land to said State; that afterwards, to wit, on the 18th day of May, 1861, the said district court of Fayette County, Texas, made an order in said suit and caused it to be enrolled in the minutes of the said court, commanding the publication for four successive weeks in a newspaper printed in the State of Texas of a notice setting forth the substance of the allegations of said petition and requiring all persons interested in the estate of said Walter Hamilton to appear and show cause at the next term of said court why the said league of land should not be vested in the State of Texas; that pursuant thereto a notice setting forth at length said order and the substance of said petition was issued by the clerk of said court and published, as required by law, for four successive weeks in a weekly newspaper called the New Era, printed and published in La Grange, in Fayette County, Texas; that sundry persons intervened in said suit, and set up claims to parts of said league of land; that said suit was continued from term to term of said court until the July term thereof in 1871, when there was a trial had, and judgment entered there to the effect that the league of land in controversy in this suit is escheated unto the State of Texas, and the title thereto is divested out of the said Walter Hamilton and his heirs, and forever vested in the State of Texas. A true and correct copy of said judgment, certified to under the hand

and seal of the clerk of the district court of Fayette County, Texas, is hereto attached and is made a part hereof.[1] That said judgment has never been reversed or vacated, but now remains in full force and effect; that, by and because of said judgment, the said Walter Hamilton, and all persons claiming through or under him, are estopped and barred of the right to have or maintain this action for the recovery of said land.

"And these defendants further say that afterwards, to wit, on the 7th day of August, 1872, pursuant to the commands of said judgment, the clerk of the district court of Fayette County, Texas, issued and delivered to the sheriff of Fayette County, Texas, an order of sale, commanding him to seize the said league of land, and sell it in manner as directed in the said judgment, and make disposition of the proceeds arising from the sale as provided therein; that said land was so seized and sold by said sheriff, and that these defendants and those under whom they claim became the purchasers of the parts of said league claimed by them at such sale, paid the amounts

---

[1] The judgment annexed was as follows :- " It is thereupon ordered, adjudged and decreed by the court, that the league of land described and set forth in plaintiff's petition as follows, to wit, [giving the description by metes and bounds] be, and the same is hereby, declared escheated unto the State of Texas, and the title thereto is hereby divested out of the said Walter Hamilton, his heirs and assigns forever, and vested in the State of Texas. It is further ordered by the court, that the clerk of this court do issue a writ, directed to the sheriff of Fayette County, Texas, commanding him, the said sheriff, to seize and sell the above described league of land as under execution, without appraisement, for cash in United States currency, on the first Tuesday in some month, after giving notice of sale as the law directs; in lots of not less than ten nor more than forty acres, and turn over the proceeds of said sale, after deducting therefrom the expenses and costs of the same, to the comptroller of public accounts for the State of Texas, taking therefor his duplicate receipt, one of which he shall file among the papers of this cause. It is further ordered by the court, that the plaintiff, the State of Texas, do have and recover of the intervenors herein, to wit, J. G. Brown, J. J. Short, Wm. Short, and —— Short, her costs of suit in this behalf had and expended, for which execution may issue. It is further ordered that the costs incurred herein by the plaintiff be taxed against the State of Texas, and certified by the clerk of this court to the comptroller of public accounts, to be paid by the treasurer upon the warrant of said comptroller."

of their respective bids to the said sheriff, and received from him deeds conveying the same to them; that for this reason, also, these defendants say that said plaintiffs are estopped from and barred of the right to have or maintain this action."

The plaintiffs, by an amended supplemental petition, demurred generally to this answer as insufficient in law, and also specially excepted to it as follows:

1st. "The escheat proceedings and final judgment obtained therein, set out in defendants' said answer, were begun and prosecuted under and by virtue of an act of the legislature of the State of Texas, entitled 'An act to provide for vesting in the State escheated property,' passed March 20, 1848, there being at the date of the filing of said escheat proceedings no other law or statute authorizing escheats; which said act was repealed and annulled by the constitution of the State of Texas of 1869, long prior to the date when the escheat judgment, pleaded and relied upon by defendants to defeat plaintiffs' title, was obtained; in this, that the law of 1848, sect. 11, provides that the sheriff of the proper county shall seize the real estate escheated to the State, and sell the same in the manner therein provided, while the constitution of 1869, art. 4, sect. 20, provides that the comptroller of the State 'shall take charge of all escheated property, keep an accurate account of all moneys paid into the treasury, and of all lands escheated to the State,' which provisions are contradictory and conflicting."

2d. If the act of 1848 was not repealed and annulled entirely, then section 11 thereof was repealed and annulled by that provision of the constitution of 1869, "and, there being no other provisions in said act by which compensation is made to the heirs of the intestates whose property has been escheated, the balance of the said act is not self-acting, and is one of confiscation, and therefore in violation of the Fifth Amendment of the Constitution of the United States and section 14 of the bill of rights of the constitution of 1869," by which "no person's property shall be taken or applied to public use without just compensation being made, unless by consent of such person."

3d. The act of 1848, if not repealed by the constitution of 1869, " was and is in contravention and violation of sect. 10, art. 1, of the Constitution of the United States of America, which provides that 'no State shall pass any bill of attainder or law impairing the' obligation of contracts,' in that said law impairs the obligation of the contract between the State of Texas and Walter F. Hamilton and his heirs by virtue of the grant under which they hold said land, and seeks to forfeit or confiscate the private property of said Hamilton, the land, by appropriating it to the common fund without making due compensation therefor."

The court overruled the general demurrer and the special exceptions to the answer, and, upon the plaintiffs declining to introduce any evidence to support their cause of action, rendered judgment for the defendants.

The plaintiffs tendered and were allowed a bill of exceptions to the rulings and judgment of the court, and sued out this writ of error.

*Mr. H. E. Barnard* and *Mr. Floyd McGown* for plaintiffs in error.

*Mr. S. R. Fisher* and *Mr. T. W. Gregory* for defendants in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

This was an action to recover land in the county of Fayette and State of Texas.

The petition alleged that the land was granted in 1831 by the Republic of Mexico to Walter F. Hamilton, and that on April 13, 1888, the plaintiffs were the owners in fee simple and entitled to the possession thereof, and the defendants then ousted them.

The defendants, in their answer, relied on proceedings in escheat, commenced in 1861, and in which judgment was rendered in 1871.

In those proceedings, as set forth in the answer, the attor-

ney for the State alleged that Walter Hamilton died, intestate and without heirs, seized and possessed of this land, and that the estate in the land escheated to the State of Texas; the court ordered publication of notice to all persons interested in the estate of Walter Hamilton to appear and show cause why the land should not be vested in the State; after due publication of the order of notice, sundry persons intervened in the suit, and set up claims to parts of the land; the case was continued from term to term until July term 1871, when a trial was had, and judgment entered that the land "be, and the same is hereby, declared escheated unto the State of Texas, and the title is hereby divested out of the said Walter Hamilton, his heirs and assigns forever, and vested in the State of Texas."

The answer alleged that that judgment had never been reversed or vacated, but remained in full force; and that, because of such judgment, Walter Hamilton, and all persons claiming through or under him, were estopped and barred of the right to maintain this action.

The answer further alleged that in 1872, pursuant to the commands of that judgment, the sheriff sold the land by auction, and the defendants and those under whom they claimed became purchasers of parts of the land at such sale, and paid the amounts of their respective bids to the sheriff, and received from him deeds conveying the land to them; and that, for this reason also, the plaintiffs were estopped and barred to maintain this action.

Although it is not directly stated, either in the petition or in the answer, that the plaintiffs claimed the land as heirs of Walter Hamilton, or Walter F. Hamilton, yet it is evident that it was so understood and intended. If the plaintiffs did not claim in his right, then, on the one hand, the Mexican grant to him in 1831, upon which they relied, both in the petition and in the exceptions to the answer, was immaterial; and, on the other hand, neither the judgment in escheat in 1871, nor the sheriff's sale in 1872, set up in the answer, would meet the allegation in the petition that the plaintiffs owned the land in 1888. And it is assumed, in the briefs of both

parties, that the Walter F. Hamilton named in the petition and the Walter Hamilton named in the answer were the same person; and that the question to be decided is whether the judgment in escheat, or the sheriff's sale under that judgment, bars the plaintiffs claiming as his heirs.

By the law of England, before the Declaration of Independence, the lands of a man dying intestate and without lawful heirs reverted by escheat to the King as the sovereign lord; but the King's title was not complete without an actual entry upon the land, or judicial proceedings to ascertain the want of heirs and devisees. *Attorney General of Ontario* v. *Mercer,* 8 App. Cas. 767, 772; 2 Bl. Com. 245. The usual form of proceeding for this purpose was by an inquisition or inquest of office before a jury, which was had upon a commission out of the Court of Chancery, but was really a proceeding at common law; and, if it resulted in favor of the King, then, by virtue of ancient statutes, any one claiming title in the lands might, by leave of that court, file a traverse, in the nature of a plea or defence to the King's claim, and not in the nature of an original suit. Lord Somers, in *The Bankers' case,* 14 Howell's State Trials, 1, 83; *Ex parte Webster,* 6 Ves. 809; *Ex parte Gwydir,* 4 Maddock, 281; *In re Parry,* L. R. 2 Eq. 95; *People* v. *Cutting,* 3 Johns. 1; *Briggs* v. *Light-Boats,* 11 Allen, 157, 172. The inquest of office was a proceeding *in rem;* when there was a proper office found for the King, that was notice to all persons who had claims to come in and assert them; and, until so traversed, it was conclusive in the King's favor. Bayley, J., in *Doe* v. *Redfern,* 12 East, 96, 103; 16 Vin. Ab. 86, pl. 1.

In this country, when the title to land fails for want of heirs and devisees, it escheats to the State as part of its common ownership, either by mere operation of law, or upon an inquest of office, according to the law of the particular State. 4 Kent Com. 424; 3 Washb. Real Prop. (4th ed.) 47, 48.

By the constitution of 1836 of the Republic of Texas, art. 4, sect. 13, it was provided that the legislature should, "as early as practicable, introduce, by statute, the common law of England, with such modifications as our circumstances, in

their judgment, may require." 2 Charters and Constitutions, 1757. And by the statutes of Texas, from the time of its existence as an independent republic, the common law of England, so far as not inconsistent with the constitution and laws of Texas, has been declared to be, together with such constitution and laws, the rule of decision, and to continue in force until altered or repealed by the legislature. Texas Stat. January 20, 1840, Paschal's Digest, (4th ed.) art. 978; Rev. Stat. of 1879, § 3128; *Courand* v. *Vollmer*, 31 Texas, 397; *Barrett* v. *Kelly*, 31 Texas, 476.

By the constitution of the State of Texas of 1845, it was provided, in art. 4, sect. 10, that the district court should have original jurisdiction " of all suits in behalf of the State to recover penalties, forfeitures and escheats;" and in art. 13, sect. 4, as follows: " All fines, penalties, forfeitures and escheats which have accrued to the Republic of Texas under the constitution and laws shall accrue to the State of Texas; and the legislature shall by law provide a method for determining what lands may have been forfeited or escheated." 2 Charters and Constitutions, 1773, 1781.

By the settled course of decision in the Supreme Court of the State, no proceedings for escheat can be had, except under and according to an act of the legislature. *Jones* v. *McMasters*, 20 How. 8, 21; *Hancock* v. *McKinney*, 7 Texas, 384, 456; *Wiederanders* v. *State*, 64 Texas, 133.

The legislature, on March 20, 1848, passed a statute, entitled " An act to provide for vesting in the State escheated property." General Laws of Texas of 1847–48, c. 145, p. 210; Paschal's Digest, arts. 3657–3674.

By section 1 of that statute, (Pasch. Dig. art. 3657,) " if any person die seized of any real, or possessed of any personal estate, without any devise thereof, and having no heirs, or where the owner of any real or personal estate shall be absent for the term of seven years, and is not known to exist, such estate shall escheat to and vest to the State." The purpose and import of the second clause of this section, concerning an owner absent for seven years and not known to exist, have been declared by the Supreme Court of the

State to be "that proof of absence of one who is not known to exist for the length of time mentioned is presumptive evidence of his death. It is not, therefore, a ground for escheat of itself, but evidence of one of the elements of title by escheat." *Hughes* v. *State*, 41 Texas, 10, 20. This is only important by way of explaining the scope of the statute, since, in the present case, both parties assume and rely upon the death of the former owner.

By section 2 (3658), when no letters testamentary or of administration appear to have been granted upon the estate of a person who has died without heirs, it is made the duty of the district attorney to file in the district court of the county "where such succession is required to be opened," which is as much as to say, where his estate would be administered, a petition setting forth "a description of the estate, the name of the person last lawfully seized or possessed of the same, the names of the tenants, or persons in actual possession, if any, and the names of the persons claiming the estate, if any such are known to claim, and the facts and circumstances in consequence of which such estate is claimed to have escheated; praying for a writ of possession for the same, in behalf of the State."

Section 3 (3659) requires *scire facias* to be issued to all persons named in the petition as in possession of or claiming the estate, requiring them to appear and show cause why it should not be vested in the State. Section 4 (3660) further requires an order of notice to be published four weeks in a newspaper printed within the State, stating briefly the contents of the petition, and requiring "all persons interested in the estate" to appear and show cause why it should not be vested in the State. The order of notice by publication to all persons interested in the estate is essential to the jurisdiction of the court; and, if no such notice is shown by the record, a judgment for the State will be reversed on writ of error, even if sued out by parties who were named in the petition and appeared and pleaded in the cause. *State* v. *Teulon*, 41 Texas, 249; *Wiederanders* v. *State*, 64 Texas, 133; *Hanna* v. *State*, 84 Texas, 664, 667.

By section 5 (3661), "all persons named in such petition as tenants or persons in actual possession, or claimants of the estate," may appear and plead, and traverse the facts stated in the petition, or the title of the State; "and any other person claiming an interest in such estate may appear and be made a defendant and plead, by motion for that purpose in open court." By section 6 (3662), if no person, after notice as aforesaid, shall appear and plead, judgment shall be rendered by default for the State. By section 7 (3663), "if any person appear and deny the title set up by the State, or traverse any material fact in the petition, issue shall be made up and tried as other issues of fact." By section 8 (3664), "if after the issue and trial it appears, from the facts found or admitted, that the State hath good title to the estate, real or personal, in the petition mentioned, or any part thereof, judgment shall be rendered that the State shall be seized or possessed thereof, and, at the discretion of the court, recover costs against the defendants." By section 9 (3665), "if it appear that the State hath no title in such estate, the defendant shall recover his costs, to be taxed and certified by the clerk; and the comptroller of public accounts shall, on such certificate being filed in his office, issue a warrant therefor on the treasury of the State, which shall be paid as other demands on the treasury." And by section 10 (3666), "when any judgment shall be rendered that the State be seized or possessed of any estate, such judgment shall contain a description thereof, and shall vest the title in the State."

By section 11 (3667), "a writ shall be issued to the sheriff of the proper county, commanding him to seize such estate, vested in the State;" and "he shall dispose thereof at public auction, in the manner provided by law for the sale of property under execution." By section 12 (3668), a copy of the record and account of sale, exemplified under the seal of the court, is required to be deposited in the office of the comptroller of public accounts, and another copy recorded in the office of the recorder of the county; "and such record shall preclude all parties and privies thereto, their heirs and assigns."

By section 13 (3669), "any party who shall have appeared

to any proceeding, and the district attorney on behalf of the State, shall have the right to prosecute an appeal or writ of error upon such judgment."

Section 14 (3670) requires that " the comptroller shall keep just accounts of all moneys paid into the treasury, and of all lands vested in the State, under the provisions of this act."

Sections 15 (3671) and 16 (3672) provide that "if any person appear, after the death of the testator or intestate, and claim any money paid into the treasury under this act," as heir, devisee or legatee, he may, by petition in the district court for the county in which the estate was sold, and after notice to the district attorney, and proof that the petitioner is an heir, devisee, legatee or legal representative, obtain an order directing the comptroller to issue his warrant on the treasurer for payment thereof.

Section 17 (3673) simply relates to the duty of the district attorney to obtain from the clerk of any probate court moneys, or title papers to land, not claimed by any heir, devisee or legal representative of a deceased person.

By section 18 (3674), "all property, escheated under the provisions of this act, shall remain subject to the disposition of the State, as may hereafter be prescribed by law."

Sections 1770–1785 of the Revised Statutes of Texas of 1879 reënact, substantially and almost verbally, the provisions of the statute of 1848, except by requiring the publication of the order of notice for eight weeks, instead of four weeks as in section 4; by omitting sections 12 and 17; and by inserting the words " The proceeds of" at the beginning of section 18.

These proceedings for the escheat of the estate of a deceased person for want of heirs or devisees, like ordinary proceedings for the administration of his estate, presuppose that he is dead; if he is still alive, the court is without jurisdiction, and its proceedings are null and void, even in a collateral proceeding. *Griffith* v. *Frazier*, 8 Cranch, 9, 23; *Scott* v. *McNeal*, 154 U. S. 34; *Hall* v. *Claiborne*, 27 Texas, 217; *Withers* v. *Patterson*, 27 Texas, 491, 497; *Martin* v. *Robinson*, 67 Texas, 368, 375; *Caplen* v. *Compton*, 5 Texas Civ. App. 410. And if the death

of the former owner, intestate and without heirs, is not alleged in the petition, or is not proved at the trial, a judgment for the State is erroneous and reversible by appeal or writ of error. *Hughes* v. *State*, 41 Texas, 10; *Wiederanders* v. *State*, 64 Texas, 133; *Hanna* v. *State*, 84 Texas, 664.

But the whole object in proceedings for escheat, as in proceedings of administration, is to ascertain who are entitled to the estate of a deceased person; in proceedings of administration, to distribute the assets, after payment of debts, among those who come forward and prove themselves to be next of kin; in proceedings for escheat, to ascertain and determine, once for all, so far as concerns the title in the land itself, whether the former owner left no heirs or devisees, that being the single question on which depends the issue whether or not the land has escheated to the State.

Consequently, when (as is admitted in the present case) the former owner was dead; and in the proceedings for escheat (as shown by the record on which the defendants rely) the petition describes the land, gives the name of the former owner, and alleges that he died intestate and without heirs, that no letters of administration upon his estate had been granted, that there is no tenant or person in actual or constructive possession of the land, nor any person, known to the petitioner, claiming an estate therein, and that the land has escheated to the State of Texas; and an order of notice to all persons interested in the estate has been published, as required by the statute; and, after a hearing of all who appear and plead, judgment is entered, describing the land, and declaring that it has escheated to the State; the judgment is conclusive evidence of the State's title in the land, not only against any tenants or claimants having had actual notice by *scire facias*, or having appeared and pleaded, but also against all other persons interested in the estate and having had constructive notice by publication.

That such is the effect of the judgment in favor of the State is clearly shown by the decision in *Wiederanders* v. *State*, above cited, in which the reasons for holding that, if the notice required by the statute to all persons interested in the estate

had not been published, the court had no jurisdiction to enter judgment, even against persons who actually appeared and contested the claim of the State, were stated by the court as follows:

"The purpose for which proceedings of this character are instituted is to have a judicial declaration, in the form of a solemn judgment made by a court having jurisdiction of the subject-matter, and of the persons in interest in so far as publication can give it, that the facts exist which, under the law, cast title upon the State to property which, at some former time, (in case of lands) it had clothed a person with title."

"The law now in force must be deemed to be a law providing a method for giving effect to escheats. R. S. 1770–1788."

"We are of the opinion that the publication of notice, required by the statute, is made necessary to the exercise of the general jurisdiction conferred, and that without it the district court had no jurisdiction to try the case.

"The object of such a proceeding is not simply to have a decree declaring the escheat, and vesting the title in the State; but by and through process, to be issued under the judgment, to divest not only the title of persons entitled to take the property of the deceased as his heirs, if perchance any such there be, but also by a sale to divest the title of the State, and to start, and confer upon the purchaser, a new title deraigned directly from the sovereign of the soil. R. S. 1777–1780.

"The proceeding, while not strictly a proceeding *in rem*, has many of its characteristics; yet the statute does not direct a seizure of the thing, which, in some cases, has been held to support a judgment strictly *in rem*. It applies to personalty, as well as realty. The mere institution of the proceeding creates no presumption that there is no one capable of taking the estate under the rules regulating the descent of estates of deceased persons; the presumption is to the contrary; and the effect of the judgment, if rendered after all persons interested in the estate are notified of the pendency and purpose of the proceeding, in the only manner in which they can be, if unknown, is to destroy that presumption, and to make the title of the State clear.

"From the time the property is sold under a valid decree, the claim of the person who might have taken it, as heir, devisee or legatee, is against the proceeds of the property, which must be paid into the state treasury, (R. S. 1780–1785,) and to recover even that, he is driven to a suit.

"It certainly is not the intention that the purchaser of escheated lands shall be subjected to the peril of losing them after they have been regularly escheated and sold, if an heir, devisee or legatee shall subsequently make claim; nor that personalty which, from day to day, changes hands, shall be subject to the claim of such persons, however valid such claim may have been if asserted in proper time and place.   Yet such results would follow if the jurisdiction of the court is not so brought into exercise, by a substantial compliance with the requisites of the statute, as to clothe it with power, by its judgment, to conclusively settle the title to the property as against all persons."   64 Texas, 135–138.

The like opinion was expressed by Chief Justice Shaw upon the effect of proceedings under a similar statute of Massachusetts, in a case in which it was held that a conveyance of real estate of a citizen dying intestate and without heirs could not be made by the Commonwealth until the rendition of judgment in its favor upon an inquest of office.   The Chief Justice said: "Where a subject dies intestate, as the estate descends to collateral kindred indefinitely, the presumption of law is that he had heirs, and this presumption will be good against the Commonwealth until it institutes the regular proceedings by inquest of office, by which the fact, whether the intestate did or did not die without heirs, can be ascertained, and if this fact is established in favor of the Commonwealth, it rebuts the contrary presumption, and the Commonwealth, by force of the judgment, and of the statute before cited, becomes seized in law and in fact.   In such case, therefore, the court are of opinion that an inquest of office is necessary, and that the Commonwealth cannot be deemed to be seized without such inquest. *Jackson* v. *Adams*, 7 Wendell, 367; *Doe* v. *Redfern*, 12 East, 96.   So far as this depends upon general principles, it seems to be a rule highly reasonable in

itself, and tends greatly to the security and regularity of titles. By the mode of taking inquests, prescribed by the law of this Commonwealth, St. 1791, c. 13, § 2, general notice is to be given of the claim of the Commonwealth, any person is admitted to traverse it, a trial by jury is to be had, and costs are given to the prevailing party. These are highly reasonable and equitable provisions, and it is manifestly for the quiet of the Commonwealth and the security of the citizen, that they should be pursued, before the Commonwealth shall be permitted to take into its own custody and dispose of estates, upon a claim which, if not doubtful, is at least not apparent." *Wilbur* v. *Tobey*, 16 Pick. 177, 180.

The constitution of Texas of 1866, art. 4, sect. 6, contained a provision, similar to that of the constitution of 1845, as to the jurisdiction of the district court over escheats; and contained no other provision on the subject of escheats. 2 Charters and Constitutions, 1789. That constitution, as was admitted by the plaintiffs, did not take away the power of the legislature over the subject, or affect the statute of 1848 or proceedings under it.

But it was strenuously contended that this statute was repealed by the constitution of 1869, which — while embodying, in art. 5, sect. 7, the provision of the former constitutions as to the jurisdiction of the district court over escheats; and repeating in art. 4, sect. 20, the provision of art. 5, sect. 23, of the constitution of 1866, establishing the office of comptroller of public accounts, to be elected by the qualified voters of the State, for the term of four years — also defined the comptroller's duties as follows: "He shall superintend the fiscal affairs of the State; give instructions to the assessors and collectors of the taxes; settle with them for taxes; take charge of all escheated property; keep an accurate account of all moneys paid into the treasury, and of all lands escheated to the State; publish annually a list of delinquent assessors and collectors, and demand of them an annual list of all taxpayers in their respective counties, to be filed in his office; keep all the accounts of the State; audit all the claims against the State; draw warrants upon the treasury in favor of the public

creditors; and perform such other duties as may be prescribed by law." 2 Charters and Constitutions, 1794, 1809, 1811.

This definition of the duties of the comptroller in the constitution of 1869 nearly follows the words of the statutes existing at the time of its adoption. Paschal's Digest, arts. 5414, 5424, 5426, 3670, 5194, 5416, 5418, 5420. The principal difference is in substituting, for the words of section 14 of the act of 1848, requiring the comptroller to "keep just accounts of all moneys paid into the treasury, and of all lands vested in the State, under the provisions of this act," the words, "take charge of all escheated property; keep an accurate account of all moneys paid into the treasury, and of all lands escheated to the State."

As the constitution of 1869 repeats, in so many words, the provision of former constitutions, by which the district court is vested with original jurisdiction of all causes in behalf of the State to recover escheats; and as the statute of 1848 made it the duty of the comptroller to keep accounts, not only of all moneys paid into the treasury, but also of all lands vested in the State, under its provisions; it is difficult to see how the insertion of the general words "take charge of all escheated property," in the definition of the comptroller's duties in the constitution of 1869, either increased his powers, or diminished those of the district court, in relation to escheats.

The whole object of inserting in the constitution a definition of the principal duties of the comptroller would seem to have been to fix by the fundamental law a matter which would otherwise have been subject to the discretion of the legislature.

The only doubt thrown upon this arises out of the opinion delivered in *Hughes* v. *State*, above cited, in which Mr. Justice Moore said: "Whether this statute had not been repealed by the provision in the constitution of 1869, which we have cited, may, we think, admit of serious question; but as it is not necessary to the determination of the present case, we are not called upon at present to determine it. We think, however, that it is quite evident this section of the constitution is in conflict with, and therefore revokes, the authority conferred

by the statute of 1848 upon the court to order the sale of escheated land, if such, indeed, can be held to be the proper construction of this statute in view of the conflicting provisions of its different sections." 41 Texas, 18, 19.

But the weight of that suggestion is much lessened, if not wholly counterbalanced, by several considerations. The decision in that case was put upon the distinct ground that the petition and the proof were both insufficient. In another case, decided at the same term, in which the opinion was delivered by the same judge, as well as in an earlier case of a writ of error to review the very judgment now pleaded, and in at least two later cases, above cited, in each of which this proposition, if sound, would have been decisive, it was not even mentioned. *State* v. *Teulon*, 41 Texas, 249; *Brown* v. *State*, 36 Texas, 282; *Wiederanders* v. *State*, 64 Texas, 133; *Hanna* v. *State*, 84 Texas, 664. And after the constitution of 1869 had been in force for ten years, the legislature, in revising and codifying the statutes of the State, reënacted all the material provisions of the act of 1848, both as to obtaining a judgment declaring the land to have escheated, and as to a subsequent sale of the land by the sheriff; and clearly manifested its understanding and intention that the provisions for such a sale did and should remain in force, by prefixing the words "The proceeds of" to the last section, which had directed "all property escheated in accordance with the provisions of" the act to "remain subject to the disposition of the State, as may hereafter be prescribed by law." Rev. Stat. of 1879, § 1785.

The plaintiffs somewhat relied on art. 10, sect. 6, of the constitution of 1869, which provides that "the legislature shall not hereafter grant lands to any person or persons, nor shall any certificates for land be sold at the land office, except to actual sellers upon the same, and in lots not exceeding one hundred and sixty acres." 2 Charters and Constitutions, 1816. But this evidently relates only to legislative grants of land, and not to judicial proceedings to declare and enforce escheats.

Even if the suggestion in *Hughes* v. *State*, above cited, that art. 4, sect. 20, of the constitution of 1869, relating to the

comptroller of accounts, "is in conflict with, and therefore revokes, the authority conferred by the statute of 1848 upon the court to order the sale of escheated land," should be considered as well founded, it would affect only section 11 of the statute, authorizing the sale, and so much of the subsequent sections as concern that subject; and would leave unaffected the preceding sections, providing for a judgment to be rendered, upon due allegation and proof, and after notice to all persons interested, ascertaining and declaring that the land has escheated to the State, and vesting in the State the title to the land. The provisions looking to a judgment vesting title to the land in the State are distinct and severable from the provisions for a sale, and a conversion into money, of the land after it has vested in the State; and if the latter provisions are for any reason invalid, they may be considered as stricken out, and the former provisions stand good. *Field* v. *Clark*, 143 U. S. 649; *Zwernemann* v. *Von Rosenberg*, 76 Texas, 522. And the judgment set up in the answer in this case, so far as it determined that the title of the land had vested by escheat in the State, was valid, even if the order for a sale of the land was not. *Ludlow* v. *Ramsey*, 11 Wall. 581.

It follows that, if the sale and conveyance by the sheriff to the defendants were invalid and vested no title in them, the previous judgment, ascertaining and declaring the escheat, vested a good title in the State of Texas against all persons claiming as heirs or devisees of the former owner; and that judgment, although it does not prove the title to be in the defendants, proves it to be out of the plaintiffs, and affords a complete defence to this action. *Love* v. *Simms*, 9 Wheat. 515, 524; *Christy* v. *Scott*, 14 How. 282, 292; *Doswell* v. *De La Lanza*, 20 How. 29, 33.

As to personal property, indeed, a judgment *in rem*, after notice by publication only, might not bind persons who had no actual notice of the proceedings, unless the thing had been first seized into the custody of the court. *The Mary*, 9 Cranch, 126, 144; *Scott* v. *McNeal*, 154 U. S. 34, 46; *Hilton* v. *Guyot*, 159 U. S. 113, 167. But it was within the power of the legislature of Texas to provide for determining and quieting the

title to real estate within the limits of the State and within the jurisdiction of the court, after actual notice to all known claimants, and notice by publication to all other persons. *Phillips* v. *Moore,* 100 U. S. 208, 212; *Arndt* v. *Griggs,* 134 U. S. 316; *Hardy* v. *Beaty,* 84 Texas, 562, 569.

When a man dies, the legislature is under no constitutional obligation to leave the title to his property, real or personal, in abeyance for an indefinite period; but it may provide for promptly ascertaining, by appropriate judicial proceedings, who has succeeded to his estate. If such proceedings are had, after actual notice by service of summons to all known claimants, and constructive notice by publication to all possible claimants who are unknown, the final determination of the right of succession, either among private persons, as in the ordinary administration of estates, or between all persons and the State, as by inquest of office or similar process to determine whether the estate has escheated to the public, is due process of law; and a statute providing for such proceedings and determination does not impair the obligation of any contract contained in the grant under which the former owner held, whether that grant was from the State or from a private person.

*Judgment affirmed.*