INHABITANTS OF NORTH BROOKFIELD *vs.* INHABITANTS OF WARREN.

Upon the issue of the settlement of a pauper, depending upon the question whether his father was born before or after the marriage of his parents, the date of which is not disputed and was more than fifty years ago; and after a witness has testified to having seen the pauper's father during the life of a person who died in the year preceding that of the marriage, and who was a stranger in blood to the pauper's family; a parchment kept framed and hanging in a conspicuous place in the house occupied by the family of the deceased, containing a record of the dates of births, marriages and deaths of various members of the family, for a long series of years, including the date of the death in question, and handed down by the father to a brother of the deceased as containing a true statement of the events recorded on it, is admissible in evidence; as is also proof of the inscription on a gravestone in the family burial-ground, bearing the name and the date of the death of the deceased.

ACTION OF CONTRACT for the support of William M. Chickering, a pauper.

At the trial in the superior court before *Lord*, J. the plaintiffs introduced evidence tending to show that Harvey Chickering, the pauper's father, was the legitimate son of Nathaniel Chickering and Ruth Richardson, (who, as was agreed, were married in Connecticut on the 22d of February 1804,) and

that Nathaniel gained a settlement in the defendant town under the *St.* of 1793.

The defendants, to prove that Harvey was born before the marriage of his parents, and was therefore illegitimate, called a witness who testified that, in the fall of 1803, in company with her aunt, Mrs. Blair, she made a visit to a relation who lived near the house in which Ruth Richardson was then living, and while there saw Harvey Chickering, then an infant two or three weeks old; that she remembered the date from the fact that Mrs. Blair's only daughter, named Susanna, was with them and was about a year old, and that this daughter was born in September 1802, and died on the 12th of December 1803; and that she had been kept in remembrance of the date of Susanna's death by constant intercourse with her family since and by frequent reference to the family record. The Blair family was not related to the Richardson or the Chickering family.

The defendants then offered, as evidence that Susanna died on the 12th of December 1803, a large ornamented sheet of parchment, bearing the inscription "family record," on which were entered the dates of the birth and marriage of Susanna Blair's parents, the dates of the birth and death of Susanna, and of the births, marriages and death of two sons born subsequently of the same parents. One of these sons, forty seven years old, testified that, ever since his earliest recollection, his father had kept this parchment framed and hanging in a conspicuous place in his dwelling-house, and had handed it down to him; that during all this time the same entries had been on it; and that his father and mother were dead. And there was evidence that the entries of the births and deaths upon the parchment were made, all at one time, by direction of Susanna's father, more than forty years before the trial; that the record of the marriages of his children had been added, from time to time, as they occurred; and that he and his son kept and exhibited the parchment as a true statement of the events recorded on it.

The defendants also offered to prove that an ancient gravestone in the burial-ground of the Blair family bore the name

Susanna, and had inscribed on it December 12th 1803 as the date of her death.

The evidence offered by the defendants was excluded; the jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*G. F. Hoar*, for the defendants.

*P. C. Bacon & P. E. Aldrich*, for the plaintiffs, cited 1 Greenl. Ev. § 52; 1 Phil. Ev. *c.* 8, § 4; *Vowles* v. *Young*, 13 Ves. 140; *Mima Queen* v. *Hepburn*, 7 Cranch, 296; *Ashley* v. *Wolcott*, 11 Cush. 192.

BIGELOW, C. J. At the trial of this case, the date of the birth of the father of the pauper, Harvey Chickering, became a material fact, because the legal settlement in controversy depended on the question whether the father was born prior to the marriage of his parents, which took place on the 22d of February 1804. To prove the illegitimacy of Harvey Chickering, the defendants introduced a witness who testified that she saw him, then an infant, during the lifetime of Susanna E. Blair. It then became important to establish the date of Susanna's death, because if she died before the date of the marriage of the parents of Harvey Chickering, it would follow that he must have been born out of wedlock.

It was a case therefore where the proof of a fact material to the issue depended on the existence of another collateral fact. The *factum probandum* might well be inferred from satisfactory evidence that an event, otherwise immaterial, took place at a particular time. Such testimony is not only competent, but without it it would often be impossible to prove essential facts in a court of justice. Direct and positive proof cannot always be obtained, and in matters especially which relate to remote periods it is necessary to resort to circumstantial evidence and presumption to supply the place of that testimony which is lost by the lapse of time and the imperfection of human memory. Such evidence in the strict legal sense is not collateral. It raises, it is true, a new and distinct inquiry; but if it affords a reasonable presumption or inference as to the principal fact or matter in issue, it is relevant and material and

does not tend to distract or mislead the jury from the real point in controversy.

The objection more strenuously urged to the evidence offered at the trial is to the nature and quality of the proof by which the defendants sought to establish the date of Susanna Blair's death. It is not denied that this evidence would have been competent, if it had been introduced to prove a fact directly in issue, such, for instance, as the date of the pauper's birth; but it is contended that it was inadmissible to establish a fact collateral in its nature, from which the main fact in issue was to be deduced by inference. But we know of no such distinction in the rules of evidence. The competency of proof cannot be made to depend on the inference or conclusion which is sought to be drawn from it. If it is competent to prove a particular fact in controversy when it is directly in issue, it is equally competent when the same fact is to be established in order to form the ground of an inference or presumption from which the material subject of inquiry can be deduced. The true test is, to inquire whether the evidence is admissible to prove the fact which it is offered to establish, and not whether such fact is directly or only collaterally in issue.

In the present case, the defendants sought to prove the date of the death of Susanna Blair by a document or chart containing a record of the births, marriages, and deaths kept in her family for a long series of years, and handed down by her deceased parent to his sons as containing a true statement of the events therein recorded; and also by proof of the inscription on the tombstone erected to her memory in the family burial-ground. Such evidence is deemed to be competent and satisfactory proof of family descent, and also of the dates of the leading events in family history, such as births, marriages and deaths, especially when they relate to ancient occurrences. They are contemporaneous with the events which they record; they are made by parties who are cognizant of the facts, and who would have no interest or motive in misstating them; and they are in their nature public, openly exhibited, and well known to the family, and therefore may be presumed to possess that authen-

ticity which is derived from the tacit and common assent of those interested in the facts which they record.

Some of the authorities seem to limit the competency of this species of proof to cases where the main subject of inquiry relates to pedigree, and where the incidents of birth, marriage and death, and the times when these events happened, are directly put in issue. But upon principle we can see no reason for such a limitation. If this evidence is admissible to prove such facts at all, it is equally so in all cases whenever they become legitimate subjects of judicial inquiry and investigation.

We are therefore of opinion that the rejection of the proof offered at the trial to establish the date of the death of a person who deceased more than fifty years previously was erroneous. 1 Greenl. Ev. §§ 103, 104. *Berkeley Peerage Case*, 4 Campb. 401. *Monkton* v. *Attorney General*, 2 Russ. & Myl. 162. *Jackson* v. *Cooley*, 8 Johns. 131.

*Exceptions sustained.*