MULLERY *et al. vs.* HAMILTON *et al.*

1. Where a legacy had been left to a certain child, and the question was whether he survived the testatrix, and whether a certain person who did survive her, and who was claimed to be the legatee, was in fact so, on the question of identity, it was admissible to show the name such person bore, his personal appearance and conversations, and the account he gave of himself, his family connections and associations.
(*a.*) Identity of person may be proved by the concurrence of several characteristics.   The tendency of the courts is to relieve parties from the *onus* of proving identity, it being, in general, more easily disproved than established.
2. There was sufficient evidence of the identity of the person claimed to be the legatee and the actual legatee to uphold the finding in this case.

February 2, 1884.

Legacies.   Evidence.   Identity.   Before Judge HAMMOND.   Fulton Superior Court.   April Term, 1884.

Reported in the decision.

W. L. CALHOUN, for plaintiffs in error.

COLLIER & COLLIER, for defendants.

HALL, Justice.

Bridget Doyle, who died in December, 1878, left a will, which was duly admitted to probate and record by the court of ordinary of Fulton county, which, among others, contained this item:

"I give, etc., to my daughter, Agnes Mary Carroll, for and during her natural life, all of my real estate in the city of Atlanta and elsewhere, of every description; and at her death, the said real estate to go to her child or children, if any she has, in fee simple; and if she die without child or children, then I desire and direct that my said real estate shall pass to and become the property in fee simple of the children, if any, of my brother John J. Hamilton and my sisters Mary O'Sullivan, Catharine Bland, Lucy Mahoney and Dora Harrington, share and share alike, except that I direct that John Golvin, the son of my said sister Dora, shall not have any part or share of my estate whatever."

The life tenant, Agnes Mary Carroll, having died, leaving no child or children, the lands devised by this item of the will were sold, and the proceeds of the sale distributed among all the devisees named therein, by order and judgment of the superior court of Fulton county, except the portion going to the child or children of John J. Hamilton, which by said judgment was directed to be retained until the further order of the court, in the matter of the claim of John J. Hamilton, in his own right and as guardian of his minor son Thomas Carroll Hamilton, who, he alleged, were the heirs at law of his son John J. Hamilton, Jr., who survived said testatrix and thereafter died, leaving no descendants and no other heirs than his father, John J. Hamilton, and his brother, Thomas Carroll Hamilton. The question reserved for determination by this order was whether John J. Hamilton, Jr., was in life when Bridget Doyle died, and whether he had subsequently died without descendants; if so, then the property bequeathed was found to belong to his father and minor brother.

This issue coming on for a hearing, was, by consent of counsel, submitted to the presiding judge's decision, both

as to the facts and law involved.   After hearing the evidence, the issue was determined in favor of the Hamiltons, and the opposite parties having moved for a new trial upon various grounds, and the motion therefor having been overruled and denied, they prosecute this writ of error to reverse that judgment.

John J. Hamilton had a son bearing his name, of whom he had lost sight for a number of years prior to the death of Bridget Doyle; in fact, John J. Hamilton, the elder, was himself thought to be dead, and his wife had married another man.   He returned to his former place of abode, when his wife and her new husband fled, carrying with them his son John J. Hamilton, Jr.; where they went he never knew, nor did he ever see his son again.   After the death of Bridget Doyle, he advertised in the "Irish World," a paper published in New York city, and also in a Chattanooga newspaper, for information concerning his lost son. In the early part of the year 1878, a youth about 18 or 19 years of age, calling himself John J. Hamilton, was seen in Nashville; the witness who saw him there described his personal appearance, the color of his hair and eyes, and learned from him his birth-place and the names of several of his relatives; he thought that he was of Irish extraction, and it is certain that John J. Hamilton, the party taking under the will of Bridget Doyle, was the child of Irish parents.   Nothing more was heard of him until March, 1880, when a person calling himself John J. Hamilton appeared at the camp of hands working on the Cincinnati Southern Railroad, between Rockwood and Keegan's Tunnel, in the state of Tennessee.   This person calling himself John J. Hamilton, shortly after arriving at that camp, died and was buried there; the witnesses who saw him describe his appearance pretty much as the person of that name seen in Nashville was described by the witness who saw him two years before; the only difference in the recollection of the different witnesses of his appearance was in the color of his eyes, one saying he had hazel, the other

saying he had grey eyes; at the latter period he appeared somewhat older than he is described as appearing in 1878, when in Nashville; he had with him, when he reached this camp, the advertisement above referred to contained in the " Irish World;" after he became seriously sick, he spoke of his parentage and his family relations, giving fuller particulars as to these than had been given in Nashville two years previously, but corresponding with the first narrative, as far as it went, upon this subject of pedigree. A witness who saw this person after he was dead saw a mark upon his arm, and the father of John J. Hamilton, Jr., testified that he had a mark upon that portion of his body.

1. Objection was made to all those portions of the testimony consisting of the sayings of the person in question, made to the witnesses both at Nashville and at Keegan's Tunnel, upon the ground that they were not the declarations of deceased persons related by blood or marriage to the party in question, and were no part of the *res gestæ*, but were made by Hamilton himself, and this objection, being overrruled, forms the first and principal ground of exception to the judgment rendered in the case. Indeed, this objection presents the question upon which this case must turn. This is not a question of pedigree. John J. Hamilton, Jr., was found by the previous judgment of the court to be the person entitled to this devise; his existence after the death of the testatrix was the fact to be determined; and whether the person seen in Nashville in 1878 was one and the same with the person calling himself John J. Hamilton, who died and was buried at Keegan's Tunnel in 1880, can, by his conversations, personal appearance, the name he bore, the account he gave of himself and family, and his connections and associations, be identified as the devisee under Bridget Doyle's will, is the question to be determined; and in determining that question, whether his conversations at either or both the above named periods are competent evidence. The gen-

eral rule upon this subject is nowhere more clearly expressed than in our Code, §3771, and that is, that, "when in legal investigations, information, conversations, letters, replies, and similar evidence, are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence."

In Hubback's Evidence of Succession, found in the 48th volume of the Law Library, the 6th chapter of that work is devoted exclusively to a consideration of "the proof of identity," and nearly all the authorities upon the subject will be found therein admirably collated and arranged. "Concordance of name alone is always some evidence of identity," "and in arriving at the conclusion, is perhaps of more value than any of those, taken separately, by which identity is usually said to be established, such as correspondence of residence, vocation, ownership of property, etc. But inasmuch as every name or other characteristic may be, as most are, common to several persons, agreement in one such particular is, in general, too weak a ground upon which to build the desired conclusion. The best foundation upon which that can be rested is pointed out by Lord Bacon, (Rules and Maxims) *identitas vere colligitur ex multitudine signorum.* The concurrence of several characteristics has a force in producing the conviction of identity, which may be represented by the increase in geometrical ratio of the forces of the same characteristics taken singly." Hubback 444, (marginal p.) and citations in note (u). Thus, while the name alone would not be sufficient to establish identity, yet it is admissible in evidence as pointing to that conclusion, in connection with other circumstances, many of which exist in this case, and are enumerated in this author. See *Ib.,* marginal pp. 446, 450, 464-468.

A reasonable certainty is all that can be required in such cases. In cases like the present, the evident leaning of the courts is in favor of relieving parties from the *onus* of proving identity, as it is a fact which, in general, is

more easy to disprove than to establish. Hennell *vs.* Lyon, 1 Barn. and Ald., 185, is a very strong case upon the question. There were few circumstances there, except sameness of name, to establish the personal identity, yet, Lord Ellenborough said, it is insisted, "that the evidence wants a further link to connect it with the defendant, and that it ought to be shown that the Charles Lyon in the answer is the present litigant. I do not know any way by which that circumstance can be supplied but by the description in the answer itself, which tallies in almost every particular. Still, however, it may be shown that he is not the same person. The question then is, whether public convenience requires that the proof should be given by the plaintiff or the defendant; and I rather think that public convenience is in favor of the admissibility of this proof, giving the other party an opportunity of showing that he was not the individual named in the answer. It should be taken as proof that he is the person named in the answer, until the contrary be shown. I do not say that it is conclusive, but that it is *prima facie* evidence." Bailey, J., is still more emphatic, declaring that in the absence of rebutting proof, the evidence given was *prima facie* evidence of identity, and if that is once established, there is an end of the case. *Ib.*, p. 186. Abbott, J., p. 187, declares: "It is not to be presumed there are two persons, but the identity is rather to be presumed, unless the plaintiff could have shown the contrary. In this case, however, there was no evidence given on the part of the defendant to rebut the presumption of identity, and therefore I think it was sufficiently established."

2. In reaching a conclusion in the case at bar, there are several circumstances that are not to be overlooked. The statements made at Nashville preceded the death of the testatrix. The party making them could have had no knowledge of a will which had not taken effect, or of his being a beneficiary thereunder,—they were made *ante litem motam.* There is a striking similitude of circum-

stances between the account then given and that which was given at Keegan's Tunnel nearly two years thereafter, with sufficient diversity as to details to repel any inference that the witnesses could have colluded in the fabrication of their several stories. The physical characteristics and appearance of the person calling himself by the same name at the different points and times named, were sufficiently alike to authorize the conclusion that they were not two distinct persons, but one and the same person. Add to this the flesh mark deposed to by another witness and recognized by the father, and we must conclude, that the result reached by the court was the correct result, and was sustained by the decided weight of the evidence, especially as that offered in rebuttal was, for the most part, of an entirely negative character.

Judgment affirmed.