Argued 26 December, 1899; decided 29 January, 1900.

## YOUNG v. STATE.

[47 L. R. A. 548, 59 Pac. 812, 60 Pac 711.]

1. Declarations of Deceased Persons as Evidence.—Declarations made by a man as to his own history and family relations are admissible after his death, for the purpose of identifying him, in an action by his relatives against the state to recover the proceeds of his estate, which has been escheated; *Thompson* v. *Woolf*, 8 Or. 454, distinguished.

2. Character of Escheat Proceedings — Finality of Findings.—Escheat proceedings are law actions, and findings of fact on disputed questions are not open to review on appeal.

3. Recovery of Escheated Property—Expenses of State.—In an action to recover the proceeds of escheated property, brought under Section 3141, Hill's Ann. Laws, providing that the recovery shall be without cost to the state, the total expense of defending the fund both in the present and all previous actions, and including the fees of special counsel, whose employment is conceded to have been proper, should be first deducted from the amount of the fund.

4. Escheat—Pleading—Expenses of State.—Since the rules of pleading in escheat proceeding under the statute are not applied as strictly as in ordinary actions, and in view of the requirement of Section 3141, Hill's Ann. Laws, that the successful claimant of an escheat shall be paid the same, "but without cost to the state," the court should deduct from the fund or property the total expense of the state in protecting it, though the state did not in its answer specify the amount expended or ask its allowance.

5. RULES OF COURT—EXPENSE OF PRINTING ABSTRACT.—Under Rule 4 of the supreme court (24 Or. 591), requiring the appellant to print so much of the record as shall be necessary to a full understanding of the question presented for decision, and no more, a party will not be allowed to charge for a large abstract when five pages would fairly present the question involved.

6. ESCHEAT—INTEREST DURING PERIOD OF APPEAL.—Under Section 3141, Hill's Ann. Laws, directing that in case a party shall be found entitled to an escheat the court shall direct the secretary of state to draw a warrant for the amount, "but without interest," and section 2219, subd. 3, providing that claims against the state shall not draw interest until after the issuance of a warrant and its nonpayment by the treasurer after demand, a successful escheat claimant whose warrant has been refused because of a pending appeal by the state is not entitled to interest from the time of the refusal until the judgment was affirmed. The general rule as to interest does not apply, for the sovereign never pays interest except by its own consent.

From Multnomah : ALFRED. F. SEARS, JR., Judge.

Action by Amos T. Young and others against the State of Oregon to recover the proceeds of the escheated property of one Fenstermacher. There was a judgment awarding plaintiffs the amount of the fund, less the expenses of this and two previous cases brought for the same purpose by other persons. The state appealed from the whole judgment, and the plaintiffs took a cross appeal from that part of the judgment deducting from the fund the expenses of defending it.                                    AFFIRMED.

For plaintiffs there was a brief over the name of *Killin & Moreland*, with an oral argument by *Mr. Julius C. Moreland*.

For the state there was a brief over the names of *Russell E. Sewall*, District Attorney, and *Chester V. Dolph*, with an oral argument by *Mr. Dolph*.

MR. JUSTICE BEAN delivered the opinion.

This is an action brought to recover the proceeds of property heretofore escheated to the state. The facts are that about thirty or forty years ago a man calling himself John Fenstermacher settled in Multnomah County, where he continued to reside until his death, in 1887, and in

the meantime accumulated considerable property.    He
seems to have been a retiring, eccentric, and somewhat
peculiar man, and, except in a very few instances, was
reticent on the subject of his parentage, antecedents, and
history.    Dying intestate, unmarried, and without known
heirs, his property was regularly escheated to the state,
in the manner provided by statute (Hill's Ann. Laws, §
3136 *et seq.*), and the proceeds thereof, amounting to
$15,165.62, were paid into the state treasury, to the credit
of the escheat fund.    Within the time allowed by law
(Hill's Ann. Laws, § 3141), this action was brought by
the plaintiffs, who claim to be his nephews and half-sisters,
to recover the escheated assets.    To prove their heirship,
they gave evidence to the effect that in 1826 or 1827 one
George Fenstermacher and Elizabeth Newhard were
married in Pennsylvania, and as a result of such marriage
four children were born to them, to wit, Lavina, Jonas,
Amanda, and John ;   the two latter of whom died at an
early age, unmarried.    About 1837 or 1838 the father
deserted the family, and was never afterwards heard of.
Lavina, the eldest daughter, then a girl ten or eleven
years of age, went out to work, and was subsequently
married to John Young, a stage driver, by whom she had
three children, one of whom died in infancy, and the
other two are plaintiffs in this action.    The mother, Eliza-
beth, with her two sons, after living among her relatives
a short time, went to the Northampton Poorhouse in
1839.    From there Jonas was bound out to one David
Keller, of Stroudsburg, Pennsylvania, where he remained
five or six years.    He then went to learn the brickmason's
trade with a man by the name of Deal, with whom he
remained a short time, and then went away to shift for
himself.    After remaining at the poorhouse for a time,
his mother married one Osterman, by whom she had three
children, who are also plaintiffs in this case.    She died

July 22, 1889. These facts were proved by persons related to the family, many of whom testified from their own knowledge. The plaintiffs further gave evidence to the effect that in June, 1855, a young man calling himself John Fenstermacher enlisted at Wilkesbarre, Pennsylvania, in Company G, Ninth Regiment, United States Infantry, and afterwards came with his company to this coast. After he enlisted he was arrested, or his arrest attempted, on a warrant under the name of Jonas Fenstermacher; but by some arrangement or management of the captain the officer was not allowed to take him, and he went on with his company. At Fort Simcoe, about 1858 or 1859, he was accused of desertion, caught, flogged, and dishonorably discharged. The plaintiffs were also permitted, over the defendant's objection and exception, to prove declarations made by the young man, John Fenstermacher, at Wilkesbarre, Pennsylvania, about the time of his enlistment, to his comrades in the army from 1855 to 1858; and by the deceased, whose property is in controversy, to the citizens of Portland, concerning his past life and history, to the effect, among other things, that he came from Pennsylvania, and his given name was not John, but Jonas; that he changed it to conceal his identity; that his father deserted the family when he was a small boy, and he and his mother went to the poorhouse; that one Dave Keller took him out and kept him a few years, when he ran away, enlisted in the army, and came with his company to Washington Territory; that he deserted, was flogged, and subsequently discharged, and came to Portland; that he had a younger brother, and a sister named Lavina, who married a stage driver named Young. And the only question to be decided is whether such evidence is competent.

1.    It is contended for the defendant that such declarations were not admissible, because there was no evidence

given or offered on the trial showing or tending to show that the Fenstermacher who resided near Portland, and whose estate is in controversy, was related to the present plaintiffs, except his own declarations. It is undoubtedly the rule that declarations of a deceased person cannot be admitted to prove the pedigree of other parties unless the relationship of the declarant to such parties is shown by evidence other than his own declarations : *Thompson* v. *Woolf*, 8 Or. 454. But the declarations of Fenstermacher were not offered or admitted in evidence as proof of pedigree, but for the purpose of identifying him as the Jonas Fenstermacher who was born and formerly lived in Pennsylvania, and who is shown by the testimony to have been a relative of the present plaintiffs in this action. Upon this question it is said in the American & English Encyclopædia of Law (vol. 9, p. 866, 1 ed.) that the "identity of person may be proved by the concurrence of several characteristics. In a question of identity it is admissible to show the name a person bore, his personal appearance and conversations, and the account he gave of himself, his family connections, and associations." This statement of the law is fully supported by the case cited (*Mullery* v. *Hamilton*, 71 Ga. 720, 51 Am. Rep. 288), and also by *Wise* v. *Wynn*, 59 Miss. 588 (42 Am. Rep. 381). The facts in the latter case are quite similar to those now under consideration. A man calling himself Charles Wise lived in Holmes County, Mississippi, continuously for many years ; and dying intestate, unmarried, and without known heirs, his property was by regular proceedings escheated to the state. Within the time limited by the statute, an action was brought for the recovery of the property by parties claiming to be heirs at law of the decedent. In support of their contention they proved that they were the children of Thomas Wise, formerly a resident of a place known as "Hell's Corner," in Virginia ;

that nearly fifty years before their father had a younger brother, named Charles, who, having seduced a young lady of respectable family, fled the country to escape the consequences of his act, and announced at the time, to an intimate friend, that he expected to go to Mississippi, and should take care that no one in Virginia should ever discover the place of his future home. From that time forth, until within a short time before the bringing of the action, nothing was ever heard in Virginia of the subsequent career of Charles Wise. Having made this character of proof the plaintiffs proposed to prove by two witnesses that the man known in Holmes County as Charles Wise, and whose estate was in litigation, told them that he came from a place in Virginia known as "Hell's Corner," that he had there a brother named Thomas, and that he had left there because of some trouble about a woman. This testimony was excluded by the trial court, but upon an appeal the supreme court, after an examination of the question, held the evidence competent, and, speaking through Mr. Justice CHALMERS, said : "Independently of these or of any authorities, we think, *ex necessitate rei*, and as a matter of common sense, that declarations such as were offered here, and under the circumstances here existing, should always be received in evidence. They stand to some extent upon the footing of declarations against interest, or of what Mr. Wharton calls 'self-disserving declarations.' If they be not admitted, there must be in many cases a failure of justice. No man who knew Charles Wise in Virginia ever saw him here, and no man who knew him here ever saw him in Virginia ; and, if we reject his own statements as to who he was and whence he came, these inquiries must remain forever unanswered. If such be the rule of law, it must be impossible legally to establish the identity of very many travelers who die among strangers in distant lands,

although in point of fact there may not be in any man's mind the slightest doubt as to who they were.''

In *Mullery* v. *Hamilton*, 71 Ga. 720 (51 Am. Rep. 288), a legacy had been left to a certain child ; and the question was whether he survived the testatrix, and whether a certain person who did survive her and claimed to be the legatee was such in fact. On the question of identity it was held admissible to show the name such person bore, his personal appearance and conversation, and the account he gave of himself, his family connections, and associations. The doctrine of this case is approved by the Civil Court of Appeals of Texas in *Nehring* v. *McMurrain*, 45 S. W. 1032; and, although the opinion in the *Nehring Case* was subsequently modified (Tex. Civ. App. 46 S. W. 369) because it appeared that the person who made the declarations was living at the time of the trial, the general doctrine does not seem to have been disturbed. In *Cuddy* v. *Brown*, 78 Ill. 415, and *Adie* v. *Commonwealth*, 25 Grat. 712, evidence of this character seems to have been admitted without objection. And in *Thompson* v. *Woolf*, 8 Or. 454, it was said by this court that such evidence would have been competent if it had been offered on the trial. From these authorities,—and they are the only ones directly in point to which our attention has been called, or which we have been able to find,—we conclude that there was no error in admitting the testimony referred to. As having more or less bearing upon the general question, reference, however, is made to Hubback, Suc. 457 ; Wharton, Ev. § 208 ; Gillett, Ind. & Col. Ev. § 143 ; *Jackson* v. *Etz*, 5 Cow. 314 ; *Howard* v. *Russell* (Tex. Sup.), 12 S. W. 525 ; *Byers* v. *Wallace*, 87 Tex. 503 (28 S. W. 1056, and 29 S. W. 760); *Inhabitants of North Brookfield* v. *Inhabitants of Warren*, 82 Mass. (16 Gray) 171; *Hintze* v. *Krabbenschmidt* (Tex. Civ. App.), 44 S. W. 38 ; *Brown* v. *Brown* (Tex. Civ. App.), 36 S. W. 918.

2.   It is held in *Fenstermacher* v. *State*, 19 Or. 504 (25 Pac. 142), that a proceeding of this kind is an action at law, and therefore the findings of the trial court upon controverted facts are not open to review here.   The court below found that the plaintiffs were the heirs at law of the deceased, and entitled to recover, and such finding is conclusive upon this appeal.

3.   The only remaining question is the amount to which the plaintiffs are entitled.   The evidence shows the original amount of the escheated assets to have been $15,165.62, but that the state has paid out $1,995.05 for costs and expenses necessarily incurred in successfully defending two certain actions brought to recover the fund by parties claiming to be entitled thereto ;   and the court below found that $1,000 is a reasonable compensation for special counsel employed by the governor to defend this action, and held that the state was entitled to retain from the escheated assets the amount of money so paid out, and such counsel fees, and entered judgment in favor of plaintiffs for the remainder.   From this judgment the plaintiffs prosecute an appeal, but, in our opinion, it must be affirmed. The proceedings for the escheat of Fenstermacher's property having been in all things regular and in accordance with the statute, the judgment therein is conclusive, and vested the title to the property in the state, save and except as the rights of subsequent claimants are preserved by section 3141 :   11 Am. & Eng. Enc. Law (2 ed.), 328 ; *Hamilton* v. *Brown*, 161 U. S. 256 (16 Sup. Ct. 585, 40 L. Ed. 691).   That section provides in substance, that, within ten years after a judgment in an escheat proceeding, a person not a party or privy thereto may file a petition in the circuit court of the county where the information was filed, showing his claim or right to the property or proceeds thereof, a copy of which must be served upon the district attorney, who must answer the same ;

and the court is thereupon required to try the issue as in
a civil action, and, if it is determined that such person is
entitled to the property or the proceeds thereof, it must
order the property, if it has not been sold, to be delivered
to him, or, if sold, and the proceeds paid into the state
treasury, then it must order the Secretary of State to draw
his warrant on the State Treasurer for the payment of the
same, "but without interest or costs to the state." It is
by virtue of this statute only that the plaintiffs have any
standing in court, and they are entitled to just what the
statute allows them, and no more ; and that is a right to
the fund, "but without interest or costs to the state,"
which plainly contemplates that it shall be paid to them,
less such costs and expenses as the state may have in-
curred on account thereof. It seems to be the primary
idea of the statute that the state shall incur no costs or
expenses on account of escheated assets or funds. Sec-
tion 3140 provides that the court before whom escheat
proceedings are conducted shall allow to the district at-
torney a reasonable fee for conducting the same, not ex-
ceeding ten per cent., which shall be paid out of the fund
itself ; and section 3144, that the fees of special counsel
employed by the governor shall be paid out of the pro-
ceeds arising from the proceedings. In our opinion, there-
fore, the plaintiffs in this case are entitled to the fund
paid into the state treasury, less the costs and expenses
incurred by the state in preserving and defending it. The
reasonableness of such costs, expenses, and attorney's fees
is not challenged ; nor is there any question as to the ne-
cessity for incurring them.

4. It is claimed, however, that because the answer to
this proceeding does not set up or allege the previous pay-
ment, nor the value, of the services of special counsel, it
ought not to be allowed ; but proceedings of this charac-
ter are statutory, and the strict rules of pleading in ordi-

nary actions do not apply. The direction of the statute
that the money shall be paid over to the claimant, "with-
out interest or costs to the state," is the measure of the
court's authority in the premises, and must be observed,
although the answer to the petition may be in some re-
spects informal or defective. It follows that the judg-
ment of the court below must be affirmed, and it is so or-
dered.                                    AFFIRMED.

Decided 26 February, 1900.

## ON DEFENDANT'S MOTION FOR COSTS AND ATTORNEY

## FEES, AND

## ON PLAINTIFF'S MOTION FOR INTEREST ON THE JUDGMENT.

[ 60 Pac. 711.]

PER CURIAM.   These are motions by the respondent to
be allowed certain sums as costs, disbursements, and at-
torney's fees, and by appellants for interest on the money
due on the judgment of the court below from the time
demand was made upon the Secretary of State for the
issuance of a warrant therefor. The special counsel for
the respondent insists that the state is entitled to retain
out of the fund in the hands of the State Treasurer the
following sums paid by it as disbursements, viz. : For
printing brief and abstract, $280 ; copy of judgment roll,
$3 ; copy of bill of exceptions, $30 ; and for extending
stenographic notes of the testimony, $30. He also peti-
tions the court for an additional allowance of $1,000 as
attorney's fees ; $10.80, traveling expenses, and eighty
cents, express charges.

5.  The appellant is required by Rule No. 4 to prepare a
printed abstract of so much of the record as may be neces-
sary to a full understanding of the question presented for
decision : 24 Or. 591. The rules adopted by the court
were designed to facilitate the dispatch of business, and

to simplify proceedings in the trial of causes upon appeal, and the rule to which attention has been called requires the appellant to include in the printed abstract only so much of the record as may be necessary to present the questions reserved by the assignment of errors : *Cox* v. *Alexander*, 30 Or. 438 (46 Pac. 794). An examination of the printed abstract herein shows that it contains three hundred and eleven pages. The action of the trial court chiefly relied upon for a reversal of the judgment is the admission of the alleged declarations of Jonas Fenstermacher in evidence for the purpose, as it is claimed by respondent's counsel, of proving his pedigree. The interrogatory propounded to a single witness upon that subject, the objection thereto, and the exception to the action of the court in permitting the witness to answer, would have been sufficient to raise the question presented by the assignment of errors. A printed abstract of four or five pages would have been amply sufficient, in our judgment, to present every question sought to be reviewed. The practice of overloading the abstract is a material departure from the design of the rules, imposes upon litigant parties needless burdens, and, instead of facilitating, impedes, the dispatch of business. We deem it proper, therefore, to disallow the payments so made by the state.

As to the claim for extra allowance as attorneys's fees, no showing was made in the court below or in this court as to the reasonable value of the service performed ; and, that court having allowed special counsel the sum of $1,000, it will not be increased in this court, nor the other items of expense be allowed, in the absence of such showing.

6. A judgment having been rendered in the court below against the state for the sum of $12,170.57, appellants' counsel on March 14, 1899, presented to the Secretary of State a certified copy of the order of said court, and

demanded that a warrant be drawn on the State Treasurer for that amount; but, the secretary having refused to issue the same, it is insisted that the defendant, having had the use of the money, should pay interest thereon at the legal rate from the time the demand was made until the judgment was affirmed. The state, by reason of its sovereignty, cannot be compelled to pay interest on its debts without its consent, evidenced by an act of the legislative assembly: *Monteith* v. *Parker*, 36 Or. 170 (59 Pac. 192). The statute, instead of providing for the payment of interest on funds arising from the sale of property escheated to the state and paid over to the State Treasurer, declares that in an action to recover said fund by a claimant thereof, if it shall be determined that he is entitled thereto, the court shall direct the Secretary of State to draw a warrant on the State Treasurer for the payment thereof, "but without interest or cost to the state:" Hill's Ann. Laws, § 3141. Plaintiffs are thus precluded from obtaining interest on their demand until they shall have secured a warrant therefor, and the same is indorsed by the State Treasurer "Not paid for the want of funds:" Hill's Ann. Laws, § 2219, subd. 3. The motions of appellants' and respondent's counsel must therefore be denied, and it is so ordered.            MOTIONS OVERRULED.