UNITED STATES v. FISH et al. (TERRITORY, Intervener).

(Third Division. Valdez. January 5, 1914.)

No. 632.

1. ESCHEAT ☞2—STATUTES—RETROSPECTIVE.

Louis Camicia died intestate without heirs, leaving real and personal estate at Valdez, Alaska, May 12, 1912. Defendant Fish was appointed administrator. At the date of his death the statutes of the United States applicable to Alaska provided that property so situated "shall escheat to and become the property of the United States." Subsequently, and on April 30, 1913, the Legislature of Alaska passed an act amending the law of escheat in Alaska, and provided that such an estate "shall escheat to and become the property of the territory of Alaska." (Laws 1913, c. 73). Thereupon the territory of Alaska intervened in these proceedings and claimed the Camicia estate by virtue of the amended act. *Held*, the Legislature had power to pass the act providing for the change in the line of escheat from the United States to the territory of Alaska, but also held that the title to the Camicia estate had vested in the United States immediately on the death of Camicia, and the title so vested precluded the Legislature of Alaska from changing the course of the escheat as to that property.

2. ESCHEAT ☞7—OPERATION AND EFFECT.

In Alaska the escheat of an estate actually occurs or takes place, or becomes vested, in a case like the one at bar, immediately upon the death of the intestate; that the right instantly accrues to the sovereign, as some of the authorities express it, as "the last heir"; and that the proceedings required by law, in the nature of office found, are merely proceedings to establish by legal proof that right which has already accrued or become vested or fixed.

3. CONSTITUTIONAL LAW ☞190—STATUTES—RETROSPECTIVE.

The Camicia estate escheated to the United States on May 12, 1912, immediately upon the death of Camicia, and, while the territorial Legislature may have had the power to enact the law which it did enact, the same could not act retrospectively, or so as to deprive the United States of that which had theretofore accrued to it.

Louis Camicia died intestate, and, so far as is known at this time, without heirs, at Valdez, Alaska, May 12, 1912, leaving estate consisting principally of real property, and some little personal property, in Valdez, Alaska.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The question in this case is: Does said estate escheat to the United States, or to the territory of Alaska?

On July 31, 1912, letters of administration were granted by the probate court at Valdez to Administrators Fish and Caswell, who filed their final report, and a decree of said probate court was filed August 13, 1913, directing Administrator Fish to hold and conserve the residue of the estate, pending the institution of escheat proceedings.

On September 18, 1913, the United States District Attorney at Valdez filed an information in this court, praying that such residue be escheated to the United States. All parties in interest were served and notice by publication given to unknown heirs.

The defendants demurred to the information of the United States.

November 28, 1913, the territory of Alaska, by leave of court first had, appeared in said case, filing an information praying that said estate escheat to the territory of Alaska.

The United States also filed a demurrer to the information filed by the territory of Alaska.

Geo. R. Walker, U. S. Dist. Atty., of Valdez, for the United States.

C. E. Bunnell, of Ruby, for defendants and Territory.

BROWN, District Judge. At the time of Camicia's death the following was the law:

Carter's Civ. Code, § 168, par. 7: "If the intestate shall leave no lineal descendants or kindred, such real property shall escheat to the United States."

Also Carter's Civ. Code, § 182: "When any person shall die without heirs, leaving any real or personal property in the district, the same shall escheat to and become the property of the United States."

The remaining sections of this chapter provide for the manner of establishing the escheat, giving notice, entering judgment, and making sale.

On August 24, 1912, the "Organic Act" became a law, entitled "An act to create a legislative assembly in the territory of Alaska, to confer legislative power thereon, and for other purposes." Act Aug. 24, 1912, c. 387, 37 Stat. 512.

Section 3 of said Organic Act provides:

"Sec. 3. *Constitution and Laws of United States Extended.*—That the Constitution of the United States, and all the laws thereof which

are not locally inapplicable, shall have the same force and effect within the said territory as elsewhere in the United States; that all of the laws of the United States heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by act of Congress; that except as herein provided all laws' now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress or by the Legislature. * * *" U. S. Comp. St. 1916, § 3530.

The territorial Legislature elected by virtue of the enabling act for Alaska, on April 30, 1913, passed a law amending the law on the subject of escheats, theretofore passed by the Congress of the United States, and in force in Alaska, which territorial law provided that:

"When any person shall die without heirs, having any real or personal property in the territory, the same shall escheat to and become the property of the territory of Alaska." Laws 1913, c. 73.

This law became operative 90 days after its passage and approval, which would be on July 30, 1913.

Counsel for the territory has shown great diligence in research and ability in presenting the several law points involved, and first as to the power of the territorial Legislature to enact such a law.

I am satisfied that the Legislature had such power. The highest and most sacred right known to a free people was conferred by the organic act, to enable the people of Alaska to have the fullest possible measure of self-government, on all subjects not specially inhibited by the organic act itself, and the constitutional limitations. Every possible intendment should be given in favor of the validity of such territorial laws, in order that the will of the people through their representatives may be given effect.

Clearly the territory is empowered to legislate on the subject of descent and distribution of property in cases of intestacy; as was said in the case of Christianson v. King County (D. C.) 196 Fed. 796:

"As already stated the legislative power of the territory extended to all rightful subjects of legislation, and a statute providing for the descent and distribution of property in cases of intestacy would certainly seem to fall within that category. The act was never disapproved by Congress."

5 A.R.—3

But while this act of the Alaska territorial Legislature should be given effect, until disapproved by Congress, can it operate retroactively, or so as to affect the distribution of Camicia's estate, he having died intestate more than a year before the territorial act went into operation?

In other words, has the United States such a vested right by operation of law, in force at the time of Camicia's death, in his estate, as precludes the territorial Legislature from changing the course of the escheat?

For the purposes of this discussion, it may be conceded that the United States itself might waive this right, and that Congress might pass a law otherwise disposing of this estate; but can the territorial Legislature do so?

Counsel' for the territory earnestly insists that the United States, or the state, county, or other body politic, to which an estate may escheat, does not acquire any vested right by operation of law, upon the death of an intestate, without heirs, but that only upon judgment entered in a proceeding in the nature of "office found" does the title vest, and cites the following from Words and Phrases Judicially Defined, page 7307:

"A 'vested right,' to be within the protection of the Constitution against interference therewith, must be something more than a mere expectation as may be based upon an anticipated continuance of the present general laws. It must have become a title, legal or equitable, to the present or future enjoyment of the property, and it is because the mere expectation of property in the future is not considered a vested right that the rules of descent are held subject to change in their application to all estates not already passed to the heirs by the death of the owner."

But this does not dispose of the question:

"Can the escheat be changed or affected by a law passed after the death of such owner, except by the sovereign power to which the escheat goes?"

Counsel for the territory cites the following from Hamilton v. Brown, 161 U. S. 256, 16 Sup. Ct. 585, and notes in 40 L. Ed. 691:

"Where the title to escheated lands vests in the state without office found, it may convey its interest at once; and where title does not vest before inquest of office, it may give a valid release of its claim to a party in possession."

Did the title to the Camicia estate vest in the United States at the instant of his death, or does the title remain in abeyance

until "office found," or the establishing of its right thereto in a judicial proceeding?

In 15 L. R. A. (N. S.) 382, the following notes are found:

"The question as to the necessity of judicial proceedings to effect an escheat of property has frequently arisen, also, where a person dies without known heirs. There is a difference of opinion in the books as to whether, in such an event, the title will vest at once in the state without office found, though the weight of authority sustains the proposition that no such proceedings are necessary to effect an escheat where the owner dies intestate, without leaving any inheritable blood. This is the rule laid down in 4 Kent, Com. 424, and in the following cases: Cunningham v. Browning, 1 Bland, Ch. [Md.] 299; State ex rel. Roberts v. Reeder, 5 Neb. 203; O'Hanlin v. Den, 20 N. J. Law, 31; Den ex dem. Van Kleek v. O'Hanlon, 21 N. J. Law, 582; McCaughal v. Ryan, 27 Barb. [N. Y.] 376; Ettenheimer. v. Heffernan, 66 Barb. [N. Y.] 374; Doe ex dem. Blount v. Horniblea, 3 N. C. (2 Hayw.) 37; Hinkle v. Shadden, 2 Swan [Tenn.] 46; Puckett v. State, 1 Sneed [Tenn.] 355; State v. Goldberg, 113 Tenn. 298, 86 S. W. 717; Ellis v. State, 3 Tex. Civ. App. 170, 21 S. W. 66, 24 S. W. 660; Sands v. Lynham, 27 Grat. [Va.] 291, 21 Am. Rep. 348."

In Ettenheimer v. Heffernan, 66 Barb. (N. Y.) 374, it is said:

"T. devised certain land to his wife, and died in 1868; his wife died in 1869 intestate. T. and wife were naturalized citizens, and at Mrs. T.'s death her relations were aliens. * * * Held, that on the death of Mrs. T., the fee passed to some person as heir or to the state; that it could not remain in abeyance; and, there being no person who could take as heir at her death, it vested instantly in the state, without the necessity for any proceedings on the part of the state."

In State v. Reeder, 5 Neb. 203, the court says:

"Const. art. 6, par. 3, declares that 'all lands,' the title to which shall fail from defect of heirs, shall revert or escheat to the state, and hence on the death of the tenant in fee with defect of heirs, the title and right of possession to the lands eo instante vests * * * in the state. * * *"

It would seem from the decided weight of authority that the escheat actually "occurs, or takes place, or becomes vested" in a case like the one at bar, immediately upon the death of the intestate; that the right instantly accrues to the sovereign, as some of the authorities express it, as "the last heir"; and that the proceedings required by law, in the nature of office found, are merely proceedings to establish by legal proof that right which has already accrued or become vested or fixed.

This is evident from a consideration of section 609, Compiled Laws of Alaska:

Section 609: "The United States may maintain any action or proceeding necessary to recover the possession of any such property, or for the enforcement or protection of its rights thereto or on account thereof, in like manner and with like effect as any natural person. Such action or proceeding shall be prosecuted by the United States attorney, by the leave and under the direction of the Attorney General, and not otherwise."

From which it would appear that the United States had the right, the same as a natural person would have had the right to restrain waste, and bring such action as might be deemed necessary to protect its property interest in the estate, before office found, or any proceeding to establish its title.

The principal portion of the estate in this case consists of real property. The money left by the intestate, being insufficient to pay the expenses of administration, certain rentals received by the administrator from the realty, were used for the purpose of paying the expenses of the last sickness, burial and expenses of administration. The rentals thus used would probably be considered as a part of the realty and, if not used, would belong to the one to whom the land would descend. As such rentals so used exceed in value the personal property of the estate, it will not be practicable or necessary to determine whether such personal property might or might not go to the territory by virtue of the territorial act above set forth.

I feel well satisfied that this estate escheated to the United States on May 12, 1912, immediately upon the death of Camicia, and that while the territorial Legislature may have had the power to enact the law which it did enact, the same could not act retrospectively, or so as to deprive the United States of that which had theretofore accrued to it.

The demurrer of the defendants to the information of the United States will therefore be overruled. The demurrer of the United States to the information of the territory of Alaska will be sustained.