Robert F. KENNEDY, Attorney General of the United States, Plaintiff,

v.

Peter GATZ, Commissioner of Revenue, State of Alaska, Defendant.

Civ. No. A–13210.

United States District Court
D. Alaska,
at Anchorage.

June 1, 1961.

Warren C. Colver, U. S. Atty., James R. Clouse, Jr., Asst. U. S. Atty., Anchorage, Alaska, Arthur R. Schor and Lillian C. Scott, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Ralph E. Moody, Atty. Gen., State of Alaska, Joseph Rudd, Asst. Dist. Atty., State of Alaska, Anchorage, Alaska, for defendant.

HODGE, District Judge.

The sole question to be decided in this case is whether the State of Alaska, as successor in interest to the Territory of Alaska, or heirs of an intestate claiming property theretofore escheated to the Territory, are entitled to dividends collected by the Territory upon corporate stock, being a portion of the escheated estate, during the period when the Territory held the estate and prior to establishment of the claim of the heirs. The Attorney General of the United States represents the heirs by reason of vesting orders as residents of Germany. Jurisdiction of the court is obtained by reason of 28 U.S.C.A. § 1345.

The agreed facts, as stipulated at a pre-trial conference, are as follows: On April 10, 1944, Frederick C. Weber died intestate at Anchorage, Alaska. His estate was duly administered upon and an order entered in the probate proceedings on March 29, 1946, escheating the estate, after payment of claims and expenses of administration, to the Territory, there being no known heirs. On January 21, 1951, Carl Bernhard Weber and Eugenie Augusta Pauline Strobel filed a petition in the then District Court for the District of Alaska claim-

ing the estate as heirs of Frederick C. Weber. On March 19, 1951, plaintiff's predecessor in office issued a vesting order vesting in himself all right and interest in the claim of Carl Bernhard Weber as a resident of Germany, and on June 26, 1951, issued a similar vesting order with reference to the interest and claim of Eugenie Strobel, a resident of Germany, both as to the money and property then held by the Treasurer of the Territory of Alaska. He then intervened in the pending action in the District Court. On December 21, 1954, an order was entered by the District Court finding that Carl Weber and Eugenie Strobel were the lawful heirs of Frederick C. Weber, vacating the escheat decree of March 29, 1946, and directing the appropriate officer of the Territory of Alaska to deliver to the Attorney General of the United States the sum of $6,056.39 under the terms of the vesting orders. This order was later amended to provide, instead, that the Territorial Treasurer deliver to the Attorney General the sum of $1,309.39 and 200 shares of stock in Hearst Consolidated Publications, Inc., of the par value of $25 per share. The Treasurer delivered the stock and forwarded his check pursuant to such order. It was subsequently discovered that there had been collected by the Treasurer prior to said order and payment the sum of $1,925 as dividends upon the Hearst stock, which was not included in the order of the District Court. Plaintiff demanded payment of these accumulated dividends, the Treasurer refused payment, and this action was brought. The money is now held by the Commissioner of the Department of Revenue of the State of Alaska.

The issue must, of course, be determined by state law. The applicable statutes, taken from Alaska Compiled Laws Annotated 1949, are:

"Sec. 57–8–1. *Decedents' estates: When intestate's property escheats.* When any person shall die intestate, without heirs, leaving real or personal property in the Territory, the same shall escheat to and become the property of the Territory of Alaska."

Section 57–8–7 makes provision to vacate the order of escheat within seven years after entry thereof upon petition filed in the District Court showing the right of the claimant to the property or the proceeds thereof, and that he had no knowledge of the proceeding for escheat. The Court must thereupon try the issues and render judgment accordingly. This section provides, in applicable part, as follows:

"If the judgment of the Court be that the claimant is entitled to the property or the proceeds thereof it shall be the duty of the Treasurer to deliver such property to such claimant, if such property has not been sold or otherwise disposed of, but not until claimant pays to the Treasurer the costs of the escheat proceedings; and, if the property has been sold or otherwise disposed of, it shall be the duty of the Treasurer to pay to such claimant, out of the general fund of the Territory, the amount received for such property, less the cost of the escheat proceedings, the cost of sale and other expenses connected with the conversion of the property to cash, and *less any interest or dividends collected by the Territory upon such property which consists of bonds, stocks or other negotiable instruments.*" (Italics added.)

It will be observed that this section of the statute makes specific provision as to dividends collected by the Territory upon the property only in the event of sale of the property, and makes no specific reference to dividends where the stock is held by the Treasurer and later delivered to the heirs, as in this case. The construction of the statute must therefore be found in the intent of the legislature or in the common law.

No case is cited or found precisely on this subject. However, a clearly analogous situation appears in the case of McKeown v. Morrow, 1918, 183 Iowa

454, 167 N.W. 193, 196, in which it is held under a similar statute, escheating property for the State School Fund with provision for claim after the expiration of ten years by establishing heirship, that although the state holds the funds meanwhile in trust for the heirs, the claimant is entitled to interest accumulated in the fund only after establishment of such claim of heirship. To quote from the opinion of the court:

" * * * We think the state, holding, as it did, the fund in trust for the plaintiff, ought not to be required to pay more than the amount of interest actually received by it after the duty arose to repay it to the plaintiff. The interest, therefore, that accumulated on the fund, after the decree was entered fixing her right, ought to be accounted for by the state, up to the time of actual payment, and we think this is the purpose and intent of the law."

Plaintiff urges in support of his position the principle respecting property in the hands of an ordinary trustee or other fiduciary to the effect that dividends on stock or interest on bank accounts actually received become a part of the estate and inure to the use of those in whom the estate ultimately vests, citing Scott on Trusts, 2nd ed., Sec. 203, and state cases; also the same principle in the case of a constructive trust where a person receives property for which he is accountable to another, citing Restatement of the Law, Restitution, Sec. 205, and Scott on Trusts, Sec. 511, contending that the words "such property" as used in the statute must include accumulations received by the Treasurer as the holder thereof

■ To hold these principles applicable in this instance is to ignore the well settled rule that escheats are purely statutory, that it is strictly within the

power of the state to prescribe the conditions of escheat, and that upon establishment of the heirship the claimant becomes entitled to what the statute gives him and no more. 19 Am.Jur., Escheat, Sec. 52 p. 413; 30 C.J.S. Escheat § 21, p. 1187; Engle v. State Land Board of Oregon, 164 Or. 109, 99 P.2d 1018; Young v. State, 36 Or. 417, 59 P. 812, 60 P. 711, 47 L.R.A. 548; Gorny v. Trustees of Milwaukee County Orphans Board, 7 Cir., 93 F.2d 107, 115 A.L.R. 1000. The Attorney General, under his vesting orders, has no greater title or claim to the fund than the heirs. Rogers v. Holmes, 214 Or. 687, 332 P.2d 608.

The Alaska statute is taken from the Oregon law.[1] It was held, both in Alaska and Oregon, that as to real estate the escheat actually occurs or becomes vested immediately upon the death of the intestate, subject to be divested if there are in fact heirs who later make themselves known. United States v. Fish, D.C.Alaska 1914, 5 Alaska 31; In re Ohlsen's Estate, 1938, 158 Or. 197, 75 P.2d 6; Wood v. Sprague, 1940, 165 Or. 122, 106 P.2d 287, 290. The Alaska case involved a controversy between the United States, to whom escheat was first provided for, and the Territory, upon amendment of the statute following passage of the Organic Act.[2] In discussing rental income from the realty, Judge Brown found that it was not necessary to determine whether such personal property might or might not go to the Territory by virtue of the amendment, as the rentals were used in paying the expenses of last illness, burial and the expense of administration.

■ The vesting of "title" to personal property such as corporate stocks may be distinguished from the income therefrom. It seems entirely logical that the legislative intent regarding Section 57–8–7, supra, is that such income, such as interest or dividends collected by the Territory, should be retained by it upon

---

**1.** Sections 168, 182, Carter's Civil Code; Laws of Oregon October 25, 1889; February 21, 1887.

**2.** Act of August 24, 1912; 37 Stat. 512, 48 U.S.C.A. § 21 et seq.

paying over the amount escheated and later claimed by heirs, for there is no reason why a distinction should be made between such retention in case of sale of the stock and delivery of the stock to the heirs, except omission by inadvertence, and that the specification as to sale was not intended to be exclusive.

I concur in the language of Justice Gaynor in McKeown v. Morrow, supra, that it is the "purpose and intent of the law" that such dividends be retained by the state.

Judgment may be entered dismissing plaintiff's complaint without costs.